IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CAROLYN JOYCE,                    :

      Plaintiff,

                            Case No. 3:17-cv-387

     v.                    :

                            JUDGE WALTER H. RICE

WRIGHT STATE UNIVERSITY,

      Defendant.                    :

---

**DECISION AND ENTRY SUSTAINING PLAINTIFF'S MOTION TO
STRIKE PORTIONS OF DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT (DOC. #10); SUSTAINING IN PART AND
OVERRULING IN PART DEFENDANT WRIGHT STATE UNIVERSITY'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT (DOC. #5);
PLAINTIFF MAY FILE MOTION FOR LEAVE TO FILE AMENDED
COMPLAINT WITHIN 30 DAYS**

---

      Plaintiff Carolyn Joyce filed suit against Wright State University ("WSU"),

alleging violations of Title IX of the Education Amendments of 1972 ("Title IX").

Title IX prohibits institutions receiving federal funding from engaging in sex-based

discrimination. 20 U.S.C. § 1681(a). Joyce's claims arise out of a sexual assault

by a fellow student, Myron Walker. She maintains that WSU exhibited deliberate

indifference to the threat posed by Walker, creating a hostile environment that

limited her ability to participate in WSU's educational programs. This matter is

currently before the Court on two pending motions: (1) Defendant WSU's Motion

to Dismiss Plaintiff's Complaint, Doc. #5; and (2) Plaintiff's Motion to Strike Portions of Defendant's Motion to Dismiss, Doc. #10.

## I.    Background and Procedural History

Plaintiff Carolyn Joyce was a student at WSU during the fall semester of 2015. The Complaint alleges that, on November 8, 2015, Myron Walker, a fellow student, sexually assaulted her in the dormitory where they both lived. She reported the incident to WSU and sought medical treatment the following day.

On November 12th, Walker was summarily suspended and instructed to leave campus after the Greene County courts issued a restraining order. A disciplinary hearing, held on November 19, 2015, involved not only Joyce's claim of sexual assault, but reports by several other female students that they too had been sexually assaulted or sexually harassed by Walker on WSU's campus. On November 20, 2015, Walker was expelled from the university and forbidden from returning to campus for any reason.

Nevertheless, in the following weeks, it appears that Walker returned to campus on at least two occasions. Over Thanksgiving break, Joyce learned from another student that Walker had been back on campus. Then, on December 16th or 17th, Joyce contacted the WSU Police after discovering, through a social media posting, that Walker was currently on campus. Although the police came to her dorm room to investigate, they said that there was nothing that they could do. No report was filed and no further action was taken.

According to Joyce, Katie Deedrick, an employee and representative of WSU, who knew of the sexual assault, was also aware that Walker had returned to campus after being expelled. Joyce alleges that she no longer felt safe on campus. She withdrew from classes and, although she applied for a tuition refund for the spring semester, none was given. She has been receiving psychological treatment since the assault, and has been unable to further her education elsewhere.

Joyce filed suit on November 6, 2017, alleging violations of Title IX. Doc. #1. She alleges that WSU knew of Walker's high school history of sexual misconduct, and of Walker's assaults on other females on WSU's campus. She maintains that WSU was deliberately indifferent in allowing Walker to enroll at WSU, and in failing to protect its students from him.

With respect to her own sexual assault, Joyce alleges that WSU was deliberately indifferent in failing to take interim measures to protect her from further incidents, allowing Walker to remain on campus for three days after she reported the rape. In addition, she alleges that WSU was deliberately indifferent in failing to enforce its order prohibiting Walker from returning to campus, thereby rendering her vulnerable to additional sexual assaults or harassment.

On December 18, 2017, WSU filed a Motion to Dismiss Plaintiff's Complaint, Doc. #5, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). It argues that Joyce's allegations fail to state a plausible claim of

deliberate indifference under Title IX, that Joyce lacks standing to pursue certain claims, and that some claims are barred by the statute of limitations.

Attached to WSU's motion were three exhibits: (1) an affidavit of Gary Dickstein, WSU's former Assistant Vice President for Student Affairs; (2) Dickstein's November 12, 2015, order prohibiting Walker from having any contact with Joyce; and (3) Dickstein's November 12, 2015, letter suspending Walker based on allegations of sexual misconduct and prohibiting him from being present on campus without permission and an escort. Doc. #5-1, PageID##25-27.

Plaintiff then filed her Memorandum in Opposition to Defendant's Motion to Dismiss, Doc. #9, along with a Motion to Strike Portions of Defendant's Motion to Dismiss Plaintiff's Complaint, Doc. #10. Both motions are fully briefed and ripe for decision.

## II.     Plaintiff's Motion to Strike (Doc. #10)

Plaintiff has moved to strike the three exhibits attached to Defendant's Motion to Dismiss, Doc. #5, and any references to them. Doc. #10. Federal Rule of Civil Procedure 12(d) states, in relevant part, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Nevertheless, the court may consider exhibits attached to a motion to dismiss, without treating it as a motion for summary judgment, as long as the exhibits "are referred to in the Complaint and are central to the claims contained

therein." *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

In this case, the exhibits at issue are not mentioned in the Complaint. Nor can it be said that they are "central to" Joyce's claims, such as a contract might be in a breach of contract action. Rather, the exhibits are submitted by WSU to counter Joyce's allegation that WSU "failed to issue any interim measures to protect Joyce, and to provide her with a safe environment." Doc. #1, PageID#6. WSU argues that the exhibits show that, within days after receiving notice of the sexual assault, it "prohibited Walker from having any contact with Plaintiff, summarily suspended Walker and, following a disciplinary hearing, expelled him from the University." Doc. #5, PageID#17. According to WSU, disallowing consideration of the no-contact order and the summary suspension—which are clearly "interim measures"— would entitle Joyce "to rely on a revisionist history to support a legally and factually deficient claim which she is not permitted to do." *Id.* at PageID##17-18 n.1 (citing *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997)).

Joyce points out, however, that, rather than *contradict* her allegations, these exhibits actually *support* her argument that WSU waited three entire days after she reported the rape before taking any action to protect her from Walker. Her Complaint expressly alleges that "Walker was permitted to remain in the Hawthorn Hall dormitory, until either November 11th or November 12th, after a restraining order was issued by the Green[e] County courts." Doc. #1, PageID#2.

5

The Court finds that the exhibits at issue do not fall within that narrow class of documents that may be considered without converting a motion to dismiss into a motion for summary judgment. They are not referred to in the Complaint and are not central to Joyce's claims. Nor are they the kinds of documents that would allow Joyce to salvage an otherwise "legally and factually deficient claim" simply by failing to attach them. *See Weiner*, 108 F.3d at 89. Accordingly, the Court SUSTAINS Plaintiff's Motion to Strike Portions of Defendant's Motion to Dismiss Plaintiff's Complaint, Doc. #10. It will not consider the exhibits or Defendant's references to them in ruling on the Motion to Dismiss.

## III.   Defendant's Motion to Dismiss (Doc. #5)

### A.   Relevant Law

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).[1] This statute encompasses sexual harassment that creates an environment so hostile "that it effectively bars the victim's access to an educational opportunity or benefit." *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 633 (1999). "[R]ecipients of federal funding may be liable for 'subject[ing]' their students to discrimination where the recipient

---

[1]   It is undisputed that WSU receives federal funding and is subject to Title IX's mandate.

is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the school's disciplinary authority." *Id.* at 646-47.

In order to succeed on a Title IX claim of student-on-student sexual harassment, a plaintiff must prove the following:

> (1) sexual harassment so severe, pervasive, and objectively offensive that it could be said to deprive the plaintiff of access to the educational opportunities or benefits provided by the school, (2) the funding recipient had actual knowledge of the sexual harassment, and (3) the funding recipient was deliberately indifferent to the harassment.

*Stiles ex rel. D.S. v. Grainger Cty.*, 819 F.3d 834, 848 (6th Cir. 2016).

WSU concedes that Joyce's allegation that she was sexually assaulted by Myron Walker is sufficiently severe to satisfy the first element. Accordingly, only the second and third elements are at issue. "Actual knowledge requires only that a single school administrator with authority to take corrective action had actual knowledge of the sexual harassment." *Id.* (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)).

The "deliberate indifference" standard sets a "high bar" for recovery. Title IX "requires only that school administrators respond to known peer harassment in a manner that is not 'clearly unreasonable in light of the known circumstances.'" *Id.* (quoting *Davis*, 526 U.S. at 648). Typically, whether school officials acted with deliberate indifference is a question of fact to be resolved by the jury after considering all relevant evidence; nevertheless, the Supreme Court has held that,

"[i]n an appropriate case," a court may determine that a school's response was not "'clearly unreasonable' as a matter of law." *Davis*, 526 U.S. at 649.

## B.    12(b)(6) Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted." The moving party bears the burden of showing that the opposing party has failed to adequately state a claim for relief. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In ruling on a 12(b)(6) motion, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis,* 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh*, 487 F.3d at 476).

Nevertheless, to survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* Although this standard does not require "detailed factual allegations," it does require more than "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Legal conclusions "must be supported by factual allegations" that give rise to an inference that the defendant is, in fact, liable for the misconduct alleged. *Id.* at 679.

### C.   Analysis

As discussed above, Joyce's Complaint alleges that WSU was deliberately indifferent: (1) in its response to prior incidents of sexual assault and sexual harassment by Walker; (2) in failing to take interim measures to protect her after she was sexually assaulted by Walker; and (3) in failing to enforce its order prohibiting Walker from being on WSU's campus.  At this juncture, the question is not whether Joyce can ultimately prevail on these theories, but, rather, whether the allegations are sufficient to state a plausible claim for relief.

### 1.   Liability Based on WSU's Alleged Deliberate Indifference to Prior Incidents of Sexual Assault and Sexual Harassment by Walker

Paragraph 10 of the Complaint alleges that "Myron Walker had received a disciplinary record for sexual assault while in high school, which Wright State knew of."  Doc. #1, PageID#2.  The Complaint further alleges that:

> 39.  Prior to November 8, 201[5], Wright State had actual knowledge of Walker's history of sexual misconduct.
> 40.  Walker had also assaulted other female students at Wright State, which Wright State had actual knowledge of.
> 41.  Wright State's enrollment of Walker and failure to protect students from him constitutes deliberate indifference.

*Id.* at PageID#5.

WSU argues that this theory of liability fails on multiple grounds. It first argues that dismissal is proper under Federal Rule of Civil Procedure 12(b)(1) because Joyce lacks standing to sue on behalf of other individuals who may have been sexually assaulted or sexually harassed by Walker. It also argues that any such claims would be time-barred. These two arguments are easily disposed of. Given that Joyce concedes that she is not seeking relief for anyone other than herself, these arguments are overruled as moot. Joyce cites to these other incidents simply to show that WSU was on notice of Walker's proclivity for sexual misconduct.

WSU does not dispute that, in appropriate circumstances, liability under Title IX may arise from reports of the sexual assault or sexual harassment of persons other than the plaintiff. In *Escue v. Northern Oklahoma College*, 450 F.3d 1146 (10th Cir. 2006), the court, referring to the Supreme Court's decision in *Gebser*, explained that "[b]y noting that actual knowledge of discrimination *in the recipient's program* is sufficient, the Court implicitly decided that harassment of persons other than the plaintiff may provide the school with the requisite notice to impose liability under Title IX." *Id.* at 1153 (emphasis in original). *See also Johnson v. Galen Health Insts., Inc.*, 267 F. Supp. 2d 679, 688 (W.D. Ky. 2003) ("the actual notice standard is met when an appropriate official has actual

knowledge of a substantial risk of abuse to students based on prior complaints by other students.").[2]

WSU notes, however, that a district court, in a footnote in an unpublished opinion, stated that the Sixth Circuit "has not recognized Title IX liability on the basis of deliberate indifference to an individual's propensity to harass . . . before an attack has occurred." *C.R. v. Novi Cmty. Sch. Dist.*, No. 14-14531, 2017 WL 528264, at *7 n. 18 (E.D. Mich. Feb. 9, 2017).

The Sixth Circuit, however, has, in fact, contemplated such a basis for liability. In *Henderson v. Walled Lake Consolidated Schools*, 469 F.3d 479 (6th Cir. 2006), a student filed suit under Title IX after being sexually harassed by her soccer coach. She alleged that the assistant principal was on notice of the coach's recent inappropriate sexual relationship with a *different* student and had failed to take adequate corrective action. Although the Sixth Circuit granted summary judgment in favor of the school, it did so based on a finding that no "administration official had actual notice of *widespread* misconduct." *Id.* at 492 (emphasis added). The court noted that there had been no other complaints about

_____

[2] WSU correctly points out that it cannot be held liable for conduct that occurred while Walker was in high school and not under WSU's disciplinary authority. *Davis*, 529 U.S. at 646-47. Nevertheless, a university's knowledge of an incoming student's past serious sexual misconduct may play a factor in determining whether the university was deliberately indifferent in its response to a later on-campus sexual assault by that student. *See, e.g., Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1293 (11th Cir. 2007). And certainly, when the university has actual knowledge of sexual harassment and sexual assaults that were committed on its own campus, as Joyce alleges here, a failure to adequately respond can give rise to a claim of deliberate indifference.

the soccer coach, and the school had responded "promptly and reasonably" to the incident involving the other student. *Id.*

Implicit in this holding is the concept that, if an appropriate official had actual notice of widespread sexual harassment or sexual assault by a particular individual, and the school failed to take appropriate action to remedy the hostile environment, it could be held liable under Title IX for a later sexual assault. The relevant questions are whether the school had actual knowledge that the assailant posed a substantial risk, and whether the school's response was clearly unreasonable in light of the known circumstances.

WSU maintains that Joyce's Complaint fails to identify with sufficient particularity Walker's prior instances of alleged sexual assault and sexual harassment. Joyce does not allege when those incidents occurred, and provides no details concerning the number or the nature of the prior incidents. WSU maintains that the allegations are too vague to support a finding that WSU was on notice of prior similar incidents and acted with deliberate indifference.

Although some courts have concluded that prior instances of sexual harassment are "too dissimilar, too infrequent, and/or too distant in time to provide the school with actual knowledge of sexual harassment in its programs," *Escue*, 450 F.3d at 1153 (internal quotation omitted), such determinations are typically made on motions for summary judgment, once the parties have had the opportunity to conduct discovery. Notably, Joyce's Complaint alleges *numerous* other incidents of sexual assault and/or sexual harassment by Walker, the vast

12

majority taking place on WSU's campus. Doc. #1, PageID##2-3. In the Court's view, Joyce's allegations of previous widespread misconduct by Walker are sufficient to open the doors to discovery.

Nevertheless, the Court agrees with WSU that Joyce's allegations concerning WSU's actual *notice* of Walker's history of sexual assaults and sexual harassment are insufficient to withstand the motion to dismiss. To succeed on her claim, Joyce must prove that a "school administrator with authority to take corrective action had actual knowledge of the sexual harassment." *Stiles*, 819 F.3d at 848 (citing *Gebser*, 524 U.S. at 290). The administrator's "actual knowledge" may come from any number of sources, including complaints by students other than the plaintiff.

Joyce's Complaint, alleging only that "Wright State" knew of Walker's high school disciplinary record and of his previous assaults on other WSU students, is too general. Absent factual allegations that someone at Wright State with authority to take corrective action had actual knowledge of these other incidents, Joyce has failed to state a claim upon which relief may be granted. The Court will, however, give Joyce 30 days from the date of this Decision and Entry to seek leave to file an Amended Complaint to cure this deficiency, if she can do so within the bounds of Federal Rule of Civil Procedure 11.

**2.    Deliberate Indifference in Failing to Take Interim Measures to Protect Joyce Following the Sexual Assault by Walker**

Joyce next alleges that, although she reported the sexual assault "to Wright State"[3] on November 9, 2015, "Walker was permitted to remain in the Hawthorn Hall dormitory, until either November 11th or November 12th, after a restraining order was issued by the Green[e] County courts."  Doc. #1, PageID#2.  She further alleges that "the Wright State Police Department did not investigate Walker's room until after he had vacated . . . Accordingly, evidence related to the assault was left in the room for days."  *Id.*  According to Joyce, "Wright State's failure to take interim measures constitutes deliberate indifference under Title IX." *Id.* at PageID#5.

WSU argues that its response to Joyce's report of sexual assault cannot be deemed deliberately indifferent, particularly given the need to provide Walker with adequate due process.  As the Complaint alleges, Walker was removed from campus within three days, had a disciplinary hearing within ten days, and was expelled the day after the hearing.

Joyce alleges, however, that WSU's failure to take *any action* to protect her until three days after she reported the sexual assault, and failure to timely investigate Walker's dorm room, where the sexual assault took place, was clearly

_____

[3]    Here, even though Joyce fails to allege that she reported the assault to an "appropriate person with authority to take corrective action," proper notice can be easily inferred from the fact that Walker was, in fact, suspended and then expelled from WSU, in response to the reported rape.

14

unreasonable in light of the known circumstances. The circumstances are potentially more egregious given that she and Walker lived in the same dormitory.

Again, whether a school acted with deliberate indifference is typically a question of fact to be resolved by the jury. At this point, the reason for the three-day delay is not known. It appears, from the Complaint, that WSU took no action to remove Walker from campus until a court issued a restraining order against him. It is not clear whether any other interim measures, not cited in the Complaint, were taken by WSU during that time period.

Ultimately, Joyce may have a difficult time convincing a factfinder that a three-day delay rises to the level of deliberate indifference. However, at this stage of the litigation, the only question is whether she has stated a plausible claim for relief. In the Court's view, she has, particularly given her allegations that WSU was aware that Walker had a history of sexual assault, and had sexually assaulted several other female students on campus. Whether the three-day delay constitutes deliberate indifference is better determined once additional facts have been obtained through discovery.

Accordingly, to the extent that Joyce has alleged a Title IX violation based on WSU's alleged deliberate indifference in failing to take interim measures to protect her from Walker, the Court overrules WSU's motion to dismiss.

3. **Deliberate Indifference in Failing to Enforce Order Prohibiting Walker's Presence on Campus**

Joyce also alleges that, although WSU expelled Walker on November 20, 2015, and forbade him from returning to campus for any reason, it failed to enforce that order. The day before Joyce returned to campus from Thanksgiving break, "she was informed by another student that Walker had been on campus since his expulsion." Doc. #1, PageID#3.

Joyce further alleges:

> 20. On or about December 16th or 17th, 2015, Joyce learned Walker was on campus presently, due to a social media video posting he made.
> 21. Joyce immediately contacted Wright State University Police, who came to Hawthorn Hall, where Joyce was staying, and although they reviewed the videos, said that there was nothing they could do, that they would not be filing a report, and that they would take no further action.
> 22. Wright State University Police did not make any report or notation of the December 16th or 17th incident whatsoever.
> 23. At that point, Joyce, who was already having a hard time coping with returning to campus, could no longer feel safe on campus and was unable to return to classes.
>            * * *
> 25. In January, Joyce spoke to Katie Deedrick, an employee and representative of Wright State University, who was aware of the incident on or about November 8th, and had been in communication with Joyce and Joyce's mother since that time.
> 26. Katie Deedrick was aware that Walker had returned to campus after his expulsion.
>            * * *
> 42. Wright State had actual knowledge of Walker's presence on campus after his expulsion.
> 43. Wright State's failure to cause Walker to be removed from campus after his expulsion constitutes deliberate indifference.

*Id.* at PageID##3-5.

Joyce maintains that it is not enough that WSU expelled Walker. She alleges that the university's failure to enforce its order prohibiting Walker's presence on campus created a hostile environment in which she felt unsafe. She maintains that, as a result, she felt compelled to withdraw from classes, and was deprived of access to further educational opportunities at WSU.

WSU, however, argues that Walker's mere presence on campus, following his expulsion, does not give rise to liability under Title IX. It notes that, following Walker's expulsion, Joyce reported no further incidents of sexual assault or sexual harassment, and never again actually encountered him on campus.

WSU relies heavily on *Ha v. Northwestern University*, No. 14C895, 2014 WL 5893292 (N.D. Ill. Nov. 13, 2014). In that case, after a female student reported a sexual assault by one of her professors, he was ordered to have no further contact with her. He complied with that order. The student, however, alleged that this was not enough. She argued that, because the professor was allowed to remain on campus, she felt unsafe and experienced panic attacks. She argued that this created a hostile environment that deprived her of educational opportunities. The court disagreed, holding that her claim was not actionable under Title IX. *Id.* at *2. It found that the university had taken appropriate remedial action and the plaintiff had no right to make "particular remedial demands." *Id.*

17

WSU also relies on *M.D. ex rel. DeWeese v. Bowling Green Independent School District*, 709 F. App'x 775 (6th Cir. 2017). There, a high school student, R.M., was expelled after sexually assaulting M.D., a fellow student. R.M. was eventually permitted to return to school for his senior year, but was ordered to have no contact with the plaintiff. He complied with that order. Although he had no further interaction with M.D., she still saw him every day. She alleged that this made her uncomfortable and created a hostile environment.

The district court granted summary judgment to the school district, and the Sixth Circuit affirmed, holding that there was no deliberate indifference. The school took immediate action to remove R.M. from the school. He was eventually permitted to return, but only on the condition that he have no contact with M.D. The court held that the condition "worked as intended." The remedial policy was successful and there were no further interactions between the two students. The court found that, because there was no ongoing harassment after the incident was reported, the case was distinguishable from other cases in which schools had "actual knowledge that their efforts to remediate *ongoing* harassment were ineffective." *Id.* at 778.

Unlike the assailants in *Ha* and *M.D.*, Walker failed to comply with WSU's remedial expulsion order which prohibited him from being present on campus and, more importantly, WSU did nothing to enforce that order. In *Ha*, the court specifically noted that "[i]f Northwestern had learned that its response was proven to be inadequate to prevent further harassment by [the professor], it would have

18

been required to take further steps to avoid liability." 2014 WL 5893292, at *2. *See also Vance v. Spencer Cty. Pub. Sch. Dist.*, 231 F.3d 253, 261 (6th Cir. 2000) (holding that when a school knows "that its remedial action is inadequate and ineffective, it is required to take reasonable action in light of those circumstances to eliminate the behavior."); *Patterson v. Hudson Area Schs.*, 551 F.3d 438, 448 (6th Cir. 2009) (same); *Wills v. Brown Univ.*, 184 F.3d 20, 26 (1st Cir. 1999) ("If the institution takes timely and reasonable measures to end the harassment, it is not liable under Title IX for prior harassment . . . Of course, if it learns that its measures have proved inadequate, it may be required to take further steps to avoid new liability.").

The Court rejects WSU's argument that, because there was no ongoing sexual harassment after Walker was expelled from the university, its response to his presence on campus cannot be deemed "inadequate." Walker was allegedly expelled because he had sexually assaulted not only Joyce, but several other female students on campus. WSU found that he posed a substantial risk, warranting the extreme remedy of expulsion. Joyce maintains that WSU's failure to enforce the expulsion order created a hostile environment. She no longer felt safe on campus and felt compelled to withdraw from the university.

In the Court's view, the fact that Joyce had no further contact with Walker and was not subjected to further sexual assaults or sexual harassment by him does not necessarily relieve WSU of liability under Title IX. In *Davis*, the Supreme Court held that deliberate indifference may "subject" students to sexual harassment if it

makes them "vulnerable" to it. 526 U.S. at 645. Here, it could be said that WSU's alleged failure to enforce the expulsion order made Joyce "vulnerable" to additional incidents of sexual assault and sexual harassment by Walker, even though she never actually encountered him on campus. *See, e.g., Doe ex rel. Doe v. Derby Bd. of Educ.*, 451 F. Supp. 2d 438, 444 (D. Conn. Sept. 15, 2006) (holding that, even absent further actual sexual harassment, plaintiff's constant exposure to a *potential* encounter with her assailant "could be found to constitute pervasive, severe, and objectively offensive harassment.").

The case of *Kelly v. Yale University*, No. 3:01-cv-1591, 2003 WL 1563424, (D. Conn. Mar. 26, 2003), is very instructive. Kelly was sexually assaulted by Nolan, a fellow college student who lived in the same dormitory. She reported the assault to appropriate officials at Yale. Nolan, however, was permitted to remain on campus for several weeks pending resolution of the university's grievance procedures. The university eventually complied with her request to provide her with alternative housing on campus. Although Kelly had no further contact with Nolan after the assault, she alleged that his presence on campus and the risk that she might encounter him created a hostile environment. She withdrew from classes for the remainder of the semester. On a motion for summary judgment, the court found that a reasonable jury could agree with Kelly that the environment was "sufficiently hostile to deprive [her] of access to educational opportunities provided by a university." *Id.* at *3.

The court rejected Yale's argument that its response to Kelly's complaint was reasonable. The court held that, "[a]lthough Kelly was not subjected to further harassment by Nolan, it was her departure from her classes and her dormitory, not any immediate action taken by Yale, that assured that outcome." *Id.* at *4. Joyce maintains that the same is true for her. It was her withdrawal from the university that ensured that she would not be the victim of further assaults or harassment by Walker. Had she remained on campus, she would have remained "vulnerable" to additional incidents, given WSU's alleged failure to enforce the expulsion order.

For the reasons explained above, the fact that Joyce never actually encountered Walker on campus after WSU issued the expulsion order does not necessarily warrant dismissal of this portion of her Title IX claim. For purposes of WSU's motion to dismiss, Joyce has adequately alleged that the sexual harassment at issue was so severe, pervasive, and objectively offensive that it effectively barred her access to educational opportunities.

Again, however, Joyce's allegations of notice are deficient as currently pled. Joyce alleges that she learned from a fellow student that Walker was present on campus over Thanksgiving break. Nevertheless, because she does not allege that she reported this information to *anyone* at WSU, WSU cannot be held liable for failing to take corrective action.

With respect to her allegation that Walker was also present on campus on December 16th or 17th, she alleges that she reported this to the WSU Police

Department, but the officers failed to take any action. Citing *Ross v. Corporation of Mercer University*, 506 F. Supp. 2d 1325, 1352 n.43 (M.D. Ga. 2007), WSU argues that a campus police officer is not an "appropriate person with authority to take corrective action." As the court explained in *Ross*, although a campus police officer is, in one sense, empowered to take "corrective action" with respect to a sexual assault, he or she has no authority to reformulate sexual harassment policies on behalf of the university to end discrimination on campus. Accordingly, notice to a campus police officer does not constitute "actual notice" for purposes of Title IX. *Id.*[4]

Joyce also alleges that "Katie Deedrick, an employee and representative of Wright State University," knew that Walker had returned to campus after being expelled. Joyce does not indicate how Deedrick knew this. Nor does she allege what Deedrick's job title was. Accordingly, the allegations are insufficient to raise a reasonable inference that Deedrick was a school administrator with authority to take corrective action. To the extent that Joyce's Title IX claim is based on WSU's alleged deliberate indifference in failing to enforce its order prohibiting Walker from returning to campus, it is subject to dismissal on this basis. Again, though, the Court will give Joyce 30 days from the date of this Decision and Order to seek leave to file an Amended Complaint to cure this deficiency, if she can do so within the bounds of Federal Rule of Civil Procedure 11.

---

[4] Of course, if the police then notified an appropriate school official that Walker had violated the order to remain off campus, this could constitute adequate notice; however, the Complaint alleges no such notification.

Assuming that Joyce can cure this deficiency, the question becomes whether her allegations of deliberate indifference to Walker's defiance of the expulsion order are sufficient to state a plausible claim. Based on the authorities cited above, the Court finds that her claims of deliberate indifference are sufficient to survive a motion to dismiss. The allegations of Walker's sexual assault of Joyce, combined with allegations that WSU knew of his history of sexual misconduct in high school, and knew that he had sexually assaulted or sexually harassed several other female students on WSU's campus, could support a finding that WSU's alleged failure to take action to enforce its order prohibiting him from being present on campus was clearly unreasonable in light of the known circumstances. It is, therefore, actionable under Title IX.

## IV.   Conclusion

For the reasons set forth above, the Court SUSTAINS Plaintiff's Motion to Strike Portions of Defendant's Motion to Dismiss Plaintiff's Complaint, Doc. #10.

The Court SUSTAINS IN PART and OVERRULES IN PART Defendant Wright State University's Motion to Dismiss Plaintiff's Complaint, Doc. #5. Within 30 days of the date of this Decision and Entry, Plaintiff may file a motion seeking leave to file an Amended Complaint to cure the identified deficiencies.

Date: June 15, 2018

WALTER H. RICE
UNITED STATES DISTRICT JUDGE